**SIGNED this 26 day of October, 2021.**



_____
John T. Laney, III
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL AND LORA MILLER | ) | CHAPTER 13 PROCEEDING |
| | ) | |
| Debtors. | ) | Case Number: 19-40964-JTL |

**MEMORANDUM OPINION ON THE DEBTORS'
OBJECTION TO THE IRS'S PROOF OF CLAIM**

The above-styled case came before the Court on the Debtors' objection to the proof of claim filed by the Internal Revenue Service ("IRS.") Debtors' Obj. to Claim, Doc No. 15. The parties disagree as to the priority status of the portion of the IRS's claim due for Shared Responsibility Payments. For the reasons stated below, the IRS's claim for Shared Responsibility

1

Payments is entitled to priority status under § 507(a)(8)(A). Accordingly, the Debtors' objection to the IRS's claim is overruled.

## I.  PROCEDURAL POSTURE AND FACTS PLED

The parties do not dispute the facts of this case. The Debtors filed their Chapter 13 case on October 21, 2019 and listed the IRS as a priority creditor for taxes due for 2016 through 2018. Debtors' Voluntary Pet., Doc. 1 at 23. The IRS filed a claim on November 20, 2019, which it amended December 6, 2019, for $30,938.76. Amended Claim No. 3 at 2. The IRS's claim included $1,390 for each tax years 2016 and 2017, totaling $2,780. *Id.* at 4-5. The IRS claims the Debtors owe that amount for Shared Responsibility Payments ("SRPs") for failing to maintain health insurance throughout the tax year in accordance with I.R.C. § 5000A(a). IRS's Opp. Br., Doc. No. 65. The IRS listed the SRPs under "Unsecured Priority Claims" under 11 U.S.C. § 507(a)(8). Amended Claim No. 3 at 4-5. The Debtors objected to the claim, stating the addition of the $2,780 as a priority claim was improper. Debtors' Supp. Br., Doc No. 63. The Debtors argue the SRP payments are not priority claims because they are not an "excise tax on a transaction" or a "tax on or measured by income." 11 U.S.C. § 507(a)(8); Debtors' Supp. Br., Doc No. 63. The IRS responded to the Debtors' objection opposing the Debtors' contentions. IRS's Opp. Br., Doc. No. 65. The Court heard the matter September 15, 2021 and took the matter under advisement.

## II.  DISCUSSION

Congress passed the Affordable Care Act which included a provision requiring individuals to either maintain qualified health insurance, qualify for an exemption, or make a "Shared Responsibility Payment" for the months without coverage or exemption. *Individual Shared Responsibility Provision*, INTERNAL REVENUE SERVICE, https://www.irs.gov/affordable-

care-act/individuals-and-families/individual-shared-responsibility-provision. Before 2018, the Shared Responsibility Payment was calculated as either a percentage of the taxpayer's household income above the return filing threshold or a flat dollar amount, whichever is greater; individuals who earned less than the return filing threshold were exempt. *Individual Shared Responsibility Provision – Reporting and Calculating the Payment,* INTERNAL REVENUE SERVICE, https://www.irs.gov/affordable-care-act/individuals-and-families/aca-individual-shared-responsibility-provision-calculating-the-payment. After the passage of the Tax Cuts and Jobs Act, the Shared Responsibility Payment fell to $0. *Id.*

Under 11 U.S.C. § 1322(a)(2), chapter 13 plans must provide for the full payment of unsecured claims entitled to priority under 11 U.S.C. § 507(a) unless the claim holder agrees otherwise. 4 Collier on Bankruptcy ¶ 507.02 (16th 2021). Section 507(a)(8) grants priority to unsecured claims of governmental units, including the IRS, only to enumerated types of claims including "a tax on or measured by income or gross receipts for a taxable year…" and "an excise tax on a transaction occurring before the date of the filing of the petition…" The IRS claims the SRP is entitled to priority under § 507(a)(8). This Court agrees.

a. **The IRS's claim for SRPs is not entitled to priority status under § 507(a)(8)(E) because there is no qualifying transaction on which the excise tax could be levied.**

The IRS claims the SRP is an excise tax on a transaction. The Debtors dispute both that the tax is an excise tax and that it is on a transaction. This Court finds that the failure to maintain health insurance is not a transaction, therefore the SRP does not qualify for priority under 507(a)(8)(E). Because the Court does not find there is a qualifying transaction, it declines to reach the issue of whether the SRP is an excise tax.

A transaction must imply some affirmative activity, not the choice of inaction. The IRS argues that the decision to not purchase insurance is a transaction in the marketplace and cites *In re Groetken*, 843 F.2d 1007, 1014 (7th Cir. 1988), which states, "Congress intended the term 'transaction' to be defined broadly." To read "transaction" so broadly as to include any action or inaction, however, would expand § 507(a)(8) to encompass all possible instances where Congress could levy an excise tax. Doing so would render the phrase "on a transaction" meaningless, violating the canons of statutory interpretation. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....")

The IRS further cites Congressional notes which state, "[a]ll Federal, State or local taxes generally considered or expressly treated as excises are covered by [§ 507(a)(8)(E)], including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes." *In re Groetken*, 843 F.2d at 1014 (citing 124 Cong. Rec. 34,016 (Senate), *reprinted in* 1978 U. S. Code Cong. & Admin. News 6505, 6567; 124 Cong. Rec. 32,416 (House), *reprinted in* 1978 U. S. Code Cong. & Admin. News 5787, 6436, 6498.) The IRS claims that, because Congress intended the definition of transaction to be so broad under § 507(a)(8)(E), "if the SRP is an excise tax, then it is an excise tax on a transaction." IRS's Second Opp. Br., Doc. No. 70. This argument is unpersuasive.

First, to make this argument, the IRS fails follow the principles of statutory interpretation. Before looking to legislative history, the Court must first inquire whether the statute's plain meaning is clear. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "When a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469,

4

475 (1992). In § 507(a)(8)(E), Congress included the phrase "on a transaction" to modify excise tax. If the intention was to give priority to all excise taxes or even excise taxes incurred generally during a specific period, Congress would have said as much. Instead, Congress states that, to be entitled to priority under § 507(a)(8)(E), the excise tax must be on a transaction. Accordingly, this Court finds that the meaning of the statute is plain and unambiguous: to qualify for priority status, the excise tax must be levied on a transaction. Therefore, the Court need not consider the Congressional record cited by the *Groetken* Court.

Similarly, outside of the context of SRPs, courts have held that "on a transaction" intentionally limits the excise taxes that receive priority under § 507(a)(8)(E). In *In re Albion Health Services*, 339 B.R. 171, 179 (Bankr. W.D. Mich. 2006), *aff'd*, 360 B.R. 599 (B.A.P. 6th Cir. 2007), the Court stated, "Congress, of course, could have intended the term 'transaction' as used in Section 507(a)(8)(E) to mean any activity subject to an excise tax. However, Section 507(a)(8) itself does not support such an interpretation." Other courts that have interpreted § 507(a)(8)(E) to its broadest readings still found that the excise tax must be based on a qualified transaction. *See e.g. In re Quiroz*, 450 B.R. 699, 702 (Bankr. E.D. Mich. 2011), *aff'd sub nom. Quiroz v. Michigan, Dep't of Treasury*, 472 B.R. 434 (E.D. Mich. 2012) (granting Michigan's Single Business Tax unsecured priority because doing business in Michigan satisfies the "transaction" element of § 507(a)(8)(E)); *In re Nat'l Steel Corp.*, 321 B.R. 901, 912 (Bankr. N.D. Ill. 2005) (finding the many transactions that businesses undertake to run, including renting office space, hiring workers, and executing contracts the as basis for the underlying "transaction" on which Texas franchise tax is levied for purposes of § 507(a)(8)(E) priority); *In re Fagan*, 465 B.R. 472, 479 (Bankr. E.D. Mich. 2012) (finding operating a commercial motor carrier the underlying transaction to support § 507(a)(8)(E) priority status for taxes levied by the Michigan

5

Motor Carrier Fuel Tax Act). Courts have not read "on a transaction" so broadly as to eliminate the phrase's meaning altogether as the IRS wishes. Instead, when granting § 507(a)(8)(E) priority status, courts have consistently found underlying transactions that support excise taxes' priority status. Because this Court cannot find an underlying transaction, the SRP cannot be granted priority status under this section.

The IRS goes on to argue the phrase "on a transaction" is restrictive of the timing of the taxed event and not the type of tax. Section 507(a)(8)(E)(i) says, "an excise tax on-- a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition." To assume that the phrase "on a transaction" acts merely as a connector between the tax and the period during which it was incurred again defies the canons of statutory interpretation. Congress included "on a transaction" to demonstrate the taxable transaction must have occurred during specified period; had Congress wanted to grant all excise taxes priority regardless of an underlying transaction, Congress could have omitted "on a transaction" and written "on any act or omission" or "on any taxable conduct." Congress's inclusion of the term "transaction" demonstrates its "clear and unambiguous[]" intent that § 507(a)(8)(E)(i) extends only to transactions and thus concludes this Court's inquiry. *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93 (2007)

Finally, in this case, the IRS claims that, if there is an underlying transaction, it is the individual's decision to not purchase health insurance during a tax year. The IRS cites *Williams v. Motley*, 925 F.2d 741 (4th Cir. 1991) to support its position that the choice to forgo insurance sufficiently qualifies as a transaction. In *Williams*, the Fourth Circuit found the State of Virginia's tax on the failure to carry car insurance constituted an excise tax for purposes of

6

unsecured priority. *Williams,* 925 F.2d at 743. The excise tax levied by Virginia, however, involves an affirmative action on the part of the taxpayer – to operate a vehicle without insurance. *Id*. The fee for an uninsured vehicle only applies to the vehicle either upon its registration without insurance or when the vehicle becomes uninsured. *Id.* The individual is exercising the privilege of using his or her car and being taxed by the car's tax status, not by the individual simply opting to fail to carry insurance.

The Ninth Circuit case, *In re DeRoche*, 287 F.3d 751 (9th Cir. 2002) affirms this Court's reading of *Williams*. In *DeRoche*, the Ninth Circuit gave a claim by the Industrial Commission of Arizona, priority under § 507(a)(8)(E)(ii). *Id*. The Industrial Commission of Arizona claimed priority status for its claim for reimbursement to the workers compensation fund. *Id*. Per the Arizona workers compensation scheme, an employer who fails to carry workers compensation insurance must reimburse the fund for expenses paid to the employer's injured employee. *Id*. The Court found "the act of employing a worker without carrying the required insurance when the worker is injured" qualified as a transaction. *Id.* at 753. The failure to maintain insurance alone did not constitute an affirmative action for purposes of the phrase "on a transaction" in § 507(a)(8)(E). The employers were not penalized for their failure to maintain insurance, but for the employment of an individual while not having insurance coverage.

The Ninth Circuit further held the date of the transaction was not the moment the decision was made to not purchase workers compensation insurance, but "the date on which the worker is injured." *Id.* In this case, because the SRP is not triggered by some activity, there is no date in which the taxpayer's choice becomes a transaction. In fact, the Supreme Court characterized the SRP as a tax and not an exercise of Congress's power under the Commerce Clause because an individual had not yet transacted in the health care marketplace, even though

7

it was predictable that he or she eventually would. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 557 (2012). Because the SRP is levied on "taxpayers' choice not to purchase healthcare" and not the taxpayer's use of the healthcare system, there is no affirmative action that can qualify as a transaction. IRS's Second Opp. Br. Doc No. 70 at 4. Therefore, this Court finds the SRP is not levied on a transaction for purposes of § 507(a)(8)(E) and not entitled to priority.

b. **The IRS's claim for SRPs is entitled to priority under § 507(a)(8)(A) because SRPs are a tax measured by income.**

The Court then looks to whether the tax is an income tax for purposes of § 507(a)(8)(A). This Court finds that it is. Section 507(a)(8)(A) grants priority to "a tax on or measured by income or gross receipts for a taxable year." Because the SRP is measured by income, it is entitled to priority treatment.

The calculation of a taxpayer's SRP is either a flat fee or a percent of an individual's income, whichever is greater. The Debtors argue that, because an individual may pay a flat rate, that the SRP is not measured by income. The flat fee, however, is paid only when it is higher than the percentage that would be paid out of an individual's income. *Individual Shared Responsibility Provision – Reporting and Calculating the Payment,* INTERNAL REVENUE SERVICE, https://www.irs.gov/affordable-care-act/individuals-and-families/aca-individual-shared-responsibility-provision-calculating-the-payment. Therefore, even the flat fee is measured by a taxpayer's income to quantify his or her responsibility.

The Debtors argue that, because the SRP employs a ceiling and a floor, it cannot be purely measured by income. This argument fails to distinguish the SRP from other income taxes that utilize a minimum threshold. For example, a single individual under 65 years old is not required to file a tax return unless his or her earned income is over $12,400 for that tax year.

8

*Dependents, Standard Deduction, and Filing Information for use in preparing 2020 Returns.*, I.R.S. Pub. 501, Cat. No. 15000U (Jan. 26, 2021), https://www.irs.gov/pub/irs-pdf/p501.pdf. To argue that the minimum income threshold and maximum payment amounts disqualify the tax as a tax on income for purposes of § 507(a)(8)(A) would disqualify federal income taxes generally from priority.

The Debtors also argue that, because other factors are considered outside of income, the SRP is not purely measured by income, disqualifying it from priority. This fails to acknowledge the other factors taken into consideration in determining an individual's federal income tax responsibility, such as number of dependents, marital status, and even household costs such as property taxes and utility bills. *Id*. The Debtors quote the reasoning by the Court in *In re Juntoff*, No. 19-17032, 2021 WL 1522206, at *10 (Bankr. N.D. Ohio Apr. 15, 2021), which states, because members of Indian Tribes are exempt from SRP payments, "it would be no more correct to say that the shared responsibility payment is 'measured by income' than it would be to say that the shared responsibility payment is 'measured by membership in an Indian Tribe.'" The Debtors, however, fail to differentiate the factors of an individual's SRP responsibility and factors that contribute to an individual's federal tax income responsibility. Under the Debtors' logic, federal income taxes adjusted for the number of dependents or adoption expenses could be said to be measured as much by parenthood as by income disqualifying those taxes from § 507(a)(8)(A) priority status. I.R.C. § 23; I.R.C. § 24.

Finally, this Court notes the decision made by the *Juntoff* Court that the IRS's reading on § 507(a)(8)(A) is too broad. In finding the SRP is not entitled to priority under § 507(a)(8)(A), the Court in *In re Juntoff* concluded that Congress meant for § 507(a)(8)(A) to limit priority only to "taxes that are traditionally understood as income taxes as opposed to expanding the definition

to include taxes on things beside income." *In re Juntoff*, 2021 WL 1522206, at *9. Yet, the plain reading of § 507(a)(8)(A) indicates that Congress grants priority to "all taxes on or measured by income, not just 'income taxes' which would encompass a more narrow group." *In re Williams*, 173 B.R. 459, 463 (Bankr. E.D.N.Y. 1994), *aff'd*, 188 B.R. 331 (E.D.N.Y. 1995). Because an individual's responsibility for the SRP is determined by his or her income, it is measured by income in accordance with § 507(a)(8)(A). Therefore, the IRS's claim for $2,780 for SRP payments is entitled to priority status.

### III. CONCLUSION

For the reasons set forth above, the IRS's claim of $2,780 for Shared Responsibility Payments is not entitled to priority status under § 507(a)(8)(E) but is entitled to priority status under § 507(a)(8)(A). Accordingly, the Debtors' objection to the IRS's claim is overruled.

END OF DOCUMENT